FILED

04/30/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2018 Session

**MELVIN BRAISON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-00611      James M. Lammey, Judge**

_____

**No. W2017-00297-CCA-R3-PC**

_____

The Petitioner, Melvin Braison, appeals the denial of his petition for post-conviction relief, arguing that he was denied the effective assistance of counsel and his guilty pleas were therefore unknowing and involuntary. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Kirk W. Stewart, Memphis, Tennessee, for the appellant, Melvin Braison.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tyler Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Petitioner's participation with his brother, Reggie Taylor[1], and a third man, Leotha Hampton, in two aggravated robberies in Memphis that occurred within thirty minutes of each other on October 7, 2014. Mr. Hampton was shot by the victim of the second robbery and died from his injuries. The Petitioner and his brother were arrested after the police found the Petitioner reversing his vehicle, in which the Petitioner's brother and Mr. Hampton were passengers, down the street on which the

_____

[1] Although the prosecutor at the guilty plea hearing referred to the Petitioner's brother as "Reginald Taylor," we use the name as it appears in the indictment.

second robbery occurred. The victims' possessions were inside the Petitioner's vehicle, and the Petitioner's brother gave a statement implicating the Petitioner in both robberies. On February 5, 2015, the Petitioner and Mr. Taylor were indicted together for the aggravated robbery of Charles Bridgewater, the attempted aggravated robbery of Cassandra Bradford, and the aggravated robbery of Durrell Davis.

On November 2, 2015, the Petitioner pled guilty to two counts of aggravated robbery in exchange for concurrent terms of 7.2 years at 85% for each count. Pursuant to the terms of his negotiated plea, the criminal attempt count of the indictment was nolle prosequied. At the guilty plea hearing, the prosecutor recited the following factual basis for the pleas:

Had these matters gone to trial, the [S]tate's proof would have been that on October 7th, 2014, Memphis police officers received a robbery call to Jackson Avenue and Speed (phonetic) here in Shelby County. Upon arrival, officers spoke to the victim who advised that after they left – the name of the bar is, quote, Our Bar, unquote. A man approached him. The suspect said, "Give me all that money you old man." The victim stated that the suspect had a black handgun. He stated that he gave the suspect his billfold containing a hundred dollars, his credit cards, personal I.D., and a cell phone.

This victim stated that the robber demanded – the female victim stated that the other robber demanded her purse, and she told him she did not have a purse. [The robber] grabbed the gold chain from around the male victim's neck and ran across the street.

On the same night of October 7th, 2014, this is approximately 1:00 o'clock in the morning, this other victim was leaving the same [b]ar with two friends. The victim got into his vehicle and drove around the corner to his home [on] . . . North Claybrook. As the victim started to get out of his vehicle, he saw two suspects rushing up to his car with a handgun. As the victim attempted to run away, the suspects – one of the suspects, rather, fired two or three shots at him hitting him in the right leg causing him to fall. The suspects ran up to the victim, pulled – the victim pulled his own pistol and fired at the suspects. Once the suspect, later identified as Leotha Hampton, collapsed on the street, the other suspect, Reginald Taylor[,] ran back to the vehicle.

Officers were called to the area. They found a 2000 Mercedes Benz driving in reverse down Claybrook. Officers stopped the vehicle after a short chase and arrested [the Petitioner], his passenger, and found Mr.

Leotha Hampton lying wounded in the backseat. [Mr.] Hampton later died of his injuries at The Med.

Reginald Taylor later gave a statement to the investigators stating that all three of them had participate[d] in the robberies. The investigators found the victims' stolen credit cards and I.D. in this vehicle.

On December 18, 2015, the Petitioner filed a pro se petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, the Petitioner filed an amended petition in which he alleged that counsel was deficient in his representation for, among other things: failing to adequately meet with the Petitioner or inform him of the evidence against him, the defense strategy, or the work counsel was performing on the case; failing to adequately investigate the case, including failing to visit the crime scene, locate and interview character witnesses, or interview the State's witnesses; and failing to file appropriate motions "to safeguard due process and challenge the evidence and charges." The Petitioner alleged that were it not for counsel's deficiencies, he would not have pled guilty.

At the January 17, 2017 evidentiary hearing, the Petitioner's trial counsel, who was retained by the Petitioner's family, testified that he represented the Petitioner throughout the entire case, starting with the preliminary hearing. He said he met with the Petitioner on at least five separate occasions, during which he reviewed the discovery he received from the State and discussed with the Petitioner the evidence against him, the pros and cons of his case, and the potential sentences he faced if convicted of all the offenses at trial.

Trial counsel was confident that he and the Petitioner discussed Mr. Taylor's statement "in quite some detail" but had no specific memory of whether they "got into detail" about whether Mr. Taylor's statement would have been excluded. He said, however, that it appeared that the State was not going to sever the offenses "and, of course, that issue would have been brought up as to whether or not there was a Bruton[2] problem with regards to [the Petitioner's] brother's statement." Counsel agreed that he and the Petitioner were able to talk with both Mr. Taylor and Mr. Taylor's counsel and that Mr. Taylor said that he would not testify against the Petitioner. Trial counsel acknowledged that the trial court denied his request to be relieved of representation of the Petitioner. He recalled that he made the request because the Petitioner's parents stopped

---

[2] See Bruton v. United States, 391 U.S. 123, 136 (1968) (holding that a defendant is deprived of his Confrontation Clause rights when a non-testifying co-defendant's confession that incriminates defendant is used at their joint trial).

- 3 -

paying the Petitioner's bill but said that he did not blame the Petitioner and that it did not prevent him from fulfilling his obligations as trial counsel.

On cross-examination, trial counsel testified that he had been practicing criminal law for twenty-four or twenty-five years, had handled thousands of criminal cases, and had tried every sort of criminal case "from a DUI to capital murder." Had the Petitioner not entered guilty pleas, he would have visited the crime scene and investigated and interviewed potential witnesses as necessary. He probably would not, however, have talked to the victims because none identified the Petitioner or claimed to have seen him. Trial counsel stated that the Petitioner's initial story to police was that he and his brother had been riding down the street when they encountered and picked up from the middle of the road a man who had been shot.

Trial counsel testified that he discussed the plea agreement with the Petitioner at length, went over the entire trial process with him, and informed him of the rights he would be waiving by pleading guilty. He told the Petitioner that the State's offer, which involved concurrent minimum sentences for the offenses, was a good deal, but he also made it clear that the decision was the Petitioner's and that he would fight to win the case if the Petitioner opted for trial. In his opinion, the Petitioner understood the entire process and what he was doing by pleading guilty.

In response to questions from the post-conviction court, trial counsel testified that the Petitioner never denied driving the vehicle. He said he believed the State could have easily convicted the Petitioner without Mr. Taylor's statement given that the Petitioner's behavior of fleeing from the police was inconsistent with his account of having innocently picked up a gunshot victim from the street. Trial counsel was fairly certain he advised the Petitioner that, based on his prior experience, the trial court would more than likely sentence the Petitioner "to consecutive time for each victim" if the Petitioner were convicted at trial of the indicted offenses.

Reggie Taylor testified that he told trial counsel that he had called the Petitioner to help him get to the hospital after he realized that he had been shot and that the Petitioner had absolutely no involvement in the crimes. He suggested that the statement he gave to police officers implicating the Petitioner was unreliable given the circumstances under which it was made, explaining that it arose from his responses to officers' questions as they were taking him from the hospital on the day following his gunshot injury. On cross-examination, Mr. Taylor acknowledged that he signed his statement and initialed each page after being advised of his rights. He claimed, however, that the statement introduced as an exhibit to the hearing contained more questions, and different questions and answers, than the one that he had signed.

The Petitioner testified on direct and cross-examination that trial counsel never met with him other than during the times he appeared at court, never shared discovery with him, and never discussed the case other than to ask about the payment of his fees and to tell him that he had an eighty percent chance of being convicted at trial because of Mr. Taylor's statement. He claimed that the only motion trial counsel filed on his behalf was a motion to sever, which was denied by the trial court. He said he was unaware of counsel's having filed a motion for exculpatory evidence, a motion for the State to reveal any agreements between the State and prosecution witnesses, and a motion for discovery because counsel never told him about them.

The Petitioner further testified that if he had known of the possibility of Mr. Taylor's statement being excluded, he would not have pled guilty but instead would have proceeded to trial. He acknowledged he had entered guilty pleas in a number of earlier cases and that he answered affirmatively when asked by the trial court in this case if he understood his rights, had discussed the plea agreement with counsel, and wished to plead guilty. He claimed he misunderstood the trial court's questions and said that he did not ask the trial court any questions himself, despite his confusion, because the trial court had not been amenable to his earlier complaints about trial counsel's performance and the conflicts he was experiencing with counsel.

At the conclusion of the hearing, the post-conviction court, which had also presided over the guilty plea hearing, noted that it had advised the Petitioner of all the constitutional rights he was waiving by pleading guilty and received the Petitioner's assurances that he understood those rights, understood what he was doing by pleading guilty, and was entering his pleas freely and voluntarily. The post-conviction specifically found that neither the Petitioner nor Mr. Taylor were truthful in their testimony at the hearing. The court also noted that the Petitioner received an extraordinarily favorable sentence as a result of the plea bargain agreement and concluded that the Petitioner failed to show that counsel was deficient in his performance or that the Petitioner was "prejudiced in any respect." Accordingly, the post-conviction denied the petition. On January 17, 2017, the post-conviction court entered an order in which it incorporated by reference its oral findings of fact and conclusions of law from the evidentiary hearing. This appeal followed.

## ANALYSIS

The Petitioner argues on appeal that his guilty pleas were not entered knowingly, voluntarily, or intelligently due to trial counsel's ineffective assistance in not informing him that Mr. Taylor's statement would likely have been excluded had the case proceeded to trial. The State argues that the post-conviction court properly concluded that the Petitioner received effective assistance of counsel. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State , 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State , 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a

- 6 -

reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State , 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We conclude that the record fully supports the findings and conclusions of the post-conviction court. Trial counsel, a very experienced criminal defense attorney, testified that he met at least five times with the Petitioner, reviewed discovery with him, and thoroughly discussed the evidence and the pros and cons of the case, including Mr. Taylor's statement, which they discussed in detail. Although trial counsel had no specific memory of his conversation with the Petitioner regarding Bruton issues, he testified that the issue would have been brought up. Trial counsel further expressed his belief that the Petitioner easily could have been convicted at trial, even without Mr. Taylor's statement, based on the State's other evidence in the case. The post-conviction court specifically found that neither the Petitioner nor his brother was credible in his testimony and that each had likely committed aggravated perjury. In addition, the record reveals that the Petitioner had an extensive criminal record and was very familiar with the criminal court system and the process of pleading guilty, which belies his claim of having experienced confusion during the plea colloquy. In sum, we conclude that the post-conviction court properly concluded that the Petitioner failed to meet his burden of demonstrating that trial counsel was ineffective or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE